FILED

MAY 2 3 2019

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BONNIE CRANKSHAW, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 1:18-CV-75-RP |
| CITY OF ELGIN and THOMAS | § | |
| MATTIS, *City Manager, in his individual capacity,* | § | |
| Defendants. | § | |

## JURY CHARGE

## I. GENERAL INSTRUCTIONS FOR THE JURY

You have heard the evidence in this case. I will now instruct you on the law you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Remember that any statements, objections, or arguments made by the lawyers are not evidence or instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

You will be given questions to answer concerning the issues in this case. Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

The instructions that follow will indicate whose burden it is to prove every element essential to its claim or defense by a "preponderance of the evidence." A preponderance of the evidence simply means the amount of evidence that persuades you a claim or defense is more likely true than

not true. In deciding whether any fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who called them, and all exhibits received in evidence, regardless of who produced them. If the proof fails to establish any essential part of a claim or defense by a preponderance of the evidence, then you must find against the party that has the burden to prove the claim or defense.

I have said that you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true and accurate. You are the sole judges of the credibility or "believability" of each witness and the weight to be given to his or her testimony. In weighing the testimony of a witness, you should consider the witness's relationship to any of the parties; his or her interest, if any, in the outcome of the case; his or her manner of testifying; his or her opportunity to observe or acquire knowledge concerning the facts about which he or she testified; his or her candor, fairness, and intelligence; and the extent to which he or she has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

In making up your mind and reaching a verdict, do not make any decisions simply because there were more witnesses on one side than the other. Do not reach a conclusion on a particular point just because there were more witnesses testifying for one side of that point. You must think about the testimony of each witness and decide how much you believe of what each witness said. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all the other evidence you believe that single witness. The testimony of a witness may be discredited by showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something, or failed to say or do something, which is inconsistent with testimony the witness gave at this trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget certain details or recollect events inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you may draw reasonable inferences from the testimony and the exhibits that you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

There are two types of evidence that you may consider. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence, which is the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it. In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the

case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, a witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you during this trial. This deposition testimony is entitled to the same consideration as if the witness had been present and had testified from the witness stand in court.

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

At times during the trial, it was necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We meet because often during a trial something comes up that does not involve the jury. You should not draw any conclusions from the fact that I have spoken with the lawyers here at the bench.

During the trial, I sustained objections to certain questions and exhibits. You must disregard those questions and evidence entirely. Do not speculate as to what the witness would have said if permitted to answer the question or as to the contents of the exhibits if they were admitted. The law requires that your decision be made solely upon the competent evidence I received in this case. Items, if any, I have stricken from your consideration were excluded because they are not legally admissible.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

Remember that you are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

## II. STIPULATIONS

The parties have agreed, or stipulated, as to certain facts. This means that both sides agree that these stipulations are facts. You must therefore treat those stipulated facts as having been proved. Further, there are facts that I am instructing you to accept. The stipulated facts are as follows: The City of Elgin stipulates to liability for FMLA Interference because it failed to timely respond to Plaintiff's first FMLA intermittent leave request on August 16, 2016.

### III. DAMAGES

If Plaintiff Crankshaw has proved her claim against the City of Elgin or Thomas Mattis by a preponderance of the evidence, you must determine the damages to which Plaintiff is entitled. You should not interpret the fact that I am giving instructions about Plaintiff Crankshaw's damages as an indication in any way that I believe that Plaintiff Crankshaw should, or should not, win this case. It is your task first to decide whether any defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that Defendants are liable and that Ms. Crankshaw is entitled to recover money from any defendant.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

If you find the City of Elgin or Thomas Mattis liable to Plaintiff Bonnie Crankshaw then you must determine an amount that is fair compensation for all of Plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole—that is, to compensate Plaintiff for the damages that she has suffered.

You may award compensatory damages only for injuries that Plaintiff proves were proximately caused by any defendants' allegedly wrongful conduct. The damages that you award must be fair compensation for all of Plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize any defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which Plaintiff has actually suffered or that Plaintiffs is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

There is no exact standard for determining actual damages. You are to determine an amount that will fairly compensate Plaintiff for the harm she sustained. Do not include as actual damages interest on wages or benefits.

To recover compensatory damages for mental and emotional distress, Plaintiff must prove that she has suffered a specific discernable injury with credible evidence. Hurt feelings, anger and frustration are part of life and are not the types of harm that could support a mental-anguish award. Doctors, psychologists, or other witnesses need not corroborate evidence of mental anguish, but Plaintiff Bonnie Crankshaw must support her claims with competent evidence of the nature, extent, and duration of the harm. Damages for mental or emotional distress must be based on the evidence at trial. They may not be based on speculation or sympathy.

Nominal damages are an inconsequential or trifling sum awarded to a plaintiff when a technical violation of her rights has occurred but the plaintiff has suffered no actual loss or injury. If you find from a preponderance of the evidence that Plaintiff Bonnie Crankshaw sustained a technical violation of any of the statutory violations claimed but that Plaintiff Bonnie Crankshaw suffered no actual loss as a result of this violation, then you may award Plaintiff Bonnie Crankshaw nominal damages.

## IV. CLAIMS

Plaintiff Bonnie Crankshaw alleges that Defendants City of Elgin and City Manager Thomas Mattis violated the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the Texas Commission on Human Rights Act ("TCHRA") when they denied her request for intermittent FMLA leave and denied her request for reasonable accommodations under the ADA and TCHRA. She alleges Defendants acted in bad faith by denying her request for ADA accommodations, placing her on FMLA leave, attempting to coerce her into resigning, and terminating her employment when she refused to either resign or sign Defendants' severance agreement.

Crankshaw claims that Defendants are responsible for any lost earnings and employment benefits, and compensatory damages, which may include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

Defendants dispute Ms. Crankshaw's claims; Defendants argue that they could not accommodate Ms. Crankshaw's PTSD without experiencing unjust hardship and that Ms. Crankshaw was terminated because of poor job performance. Defendant Mattis also argues that he is entitled to qualified immunity for Plaintiff's FMLA claims against him. Defendants both argue that Ms. Crankshaw failed to mitigate her damages.

## V. EXPLANATIONS

### A. **FMLA Interference**

Plaintiff Bonnie Crankshaw claims that she was entitled to time off from work under the FMLA, and that Defendants interfered with, restrained, or denied her entitlement to that time off. Defendants deny Plaintiff Bonnie Crankshaw's claims and contend that they did not interfere with her right to take time off from work under the FMLA or threaten to fire her if she took FMLA leave, and that Defendant Mattis approved her request to take intermittent FMLA leave from her job as the Human Resources Administrator of the City of Elgin.

It is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA. FMLA rights include: (1) requesting or taking leave under the statute; (2) having an employer maintain certain employment benefits during leave; and (3) when leave is completed, being restored to the position the employee held when leave began, or to a position that has equivalent employment benefits, pay, and other terms and conditions.

An employee is entitled to take up to 12 weeks of leave in any 12-month period because of a "serious health condition" that made the employee unable to perform the functions of her position. A "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves either (a) inpatient care in a hospital, hospice, or residential medical care facility, or (b) continuing treatment by a health care provider.

When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days.

To succeed, Plaintiff Crankshaw must prove by a preponderance of the evidence that she was entitled to time off from work:

1. Because Plaintiff Crankshaw had a "serious health condition" that made her unable to perform the functions of her employment position;

2. Plaintiff Crankshaw gave Defendants proper notice of the need for time off from work for this reason; and

3. Defendants interfered with, restrained, or denied Plaintiff Crankshaw's entitlement to take time off from work.

If the statutory requirements have been otherwise satisfied, then it does not matter whether Defendants intended to violate the FMLA. If Defendants denied Plaintiff Crankshaw a right to which she was entitled under the FMLA, then you should find for Plaintiff Crankshaw on this issue.

On her return from FMLA leave, an employee is entitled to be restored to the position she held when the leave began, or to an equivalent position. An "equivalent position" is one that is virtually identical to the position the employee held at the time her leave began, with equivalent employment benefits, pay, and other terms and conditions of employment. An employee is entitled to job restoration even if she was replaced while on leave or her position was restructured to accommodate the leave.

An employee's exercise of FMLA leave rights does not entitle her to greater rights to continued employment or employment benefits than any of her fellow employees who did not exercise FMLA leave rights. The employer is not required to restore the employee to the same or an equivalent position if the employer proves that the employee's employment/benefits would have ended even if she had not exercised her FMLA leave rights.

To show that she was not restored to the same or equivalent job position on return from FMLA leave, Plaintiff Crankshaw must prove by a preponderance of the evidence that:

1. Plaintiff sought to return to employment with Defendant City of Elgin following FMLA leave; and

2. Defendants failed to restore Plaintiff Crankshaw to the same position she held at

the time FMLA leave began, or to an equivalent position.

If Plaintiff proves that Defendants failed to restore her to the same or an equivalent employment position, Defendants may nevertheless succeed by proving by a preponderance of the evidence that Plaintiff's same job, or an equivalent one, would no longer have been available to her when job restoration was sought because of reasons unrelated to the leave.

## B.  **FMLA Retaliation**

Plaintiff Bonnie Crankshaw also claims that she would not have been terminated by Defendant but for her submitting her request for intermittent FMLA leave. Defendants City of Elgin and Thomas Mattis deny this claim and contend that Plaintiff Bonnie Crankshaw was terminated due to poor job performance and for abandoning her job.

It is unlawful for an employer to retaliate against an employee for engaging in FMLA-protected activity. FMLA-protected activity includes requesting or taking FMLA leave.

To prevail on her FMLA retaliation claim, Plaintiff Crankshaw must prove by a preponderance of the evidence that:

1.      She engaged in FMLA-protected activity;

2.      Defendants terminated her employment; and

3.      Defendants would not have terminated Plaintiff but for her engaging in FMLA-protected activity.

Plaintiff Crankshaw does not have to prove that her FMLA-protected activity is the only reason Defendants terminated Plaintiff Crankshaw's employment. But Plaintiff Crankshaw must prove that she would not have been terminated in the absence of her FMLA-protected activity. In making your assessment, you are not required to believe inconsistent or later-determined explanations for the Defendants' decision to terminate Plaintiff.

If you disbelieve the reason Defendants have given for their decision, you may, but are not required to, infer that Defendants would not have terminated Plaintiff's employment but for her FMLA-protected activity.

Taking FMLA leave is a distinct issue from whether or not Plaintiff returned from her FMLA leave at the appropriate time. It does not violate FMLA to terminate the employment of an employee because the employee failed to return to work at the conclusion of FMLA leave.

The FMLA does not shield against harsh treatment in the workplace. Nor does the statute require the employer to have good cause for its decisions. The FMLA is not a vehicle for second-guessing business decisions. An employer may take adverse action against an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, so long as its action is not for a reason prohibited under the FMLA.

### C. ADA & TCHRA Failure to Accommodate

Plaintiff Bonnie Crankshaw claims that Defendant City of Elgin failed to reasonably accommodate Plaintiff's disability. Defendant denies Plaintiff's claims and contends and contends that the requested accommodations would have created an undue hardship on the City of Elgin.

The law requires an employer to make reasonable accommodations for an employee's disability. Once an employee has made a request for an accommodation, an employer is required to engage in an interactive process to determine what precise accommodations are necessary.

To succeed in this case, Plaintiff Bonnie Crankshaw must prove each of the following by a preponderance of the evidence:

1.   Plaintiff Bonnie Crankshaw could have performed the essential functions of the Human Resources Director job when Defendant City of Elgin denied her request for an accommodation if Plaintiff had been provided with the following accommodations:

    a.   Allow Plaintiff the ability to work on a flexible schedule, working from home to make up hours missed in the office;

    b.   hire a temporary assistant to help with the overage of clutter in office that was inherited and assist with record retention;

    c.   schedule weekly meetings with supervisor to determine if goals are being met;

    d.   encourage the use of stress management techniques to deal with frustration (i.e., exercise recommended by doctor);

    e.   provide backup coverage for department when needed;

    f.   allow a consistent "core" schedule;

    g.   reduce workplace stressors; or

    h.   Provide disability awareness training to supervisors;

2.   Plaintiff Bonnie Crankshaw had post-traumatic stress disorder;

3.   Such post-traumatic stress disorder substantially limited Plaintiff Bonnie Crankshaw's ability to concentrate, think, communicate, and work;

4.      Defendant City of Elgin knew of Plaintiff's post-traumatic stress disorder;

5.      Plaintiff Bonnie Crankshaw requested an accommodation;

6.      Providing an accommodation would have been reasonable; and

7.      Defendant City of Elgin failed to provide a reasonable accommodation.

A "disability" is a mental impairment that substantially limits one or more major life activities. In determining whether Plaintiff Bonnie Crankshaw's impairment substantially limits her ability to concentrate, think, communicate, and work, you should compare her ability to concentrate, think, communicate, and work with that of the average person. In doing so, you should also consider: (1) the nature and severity of the impairment; (2) how long the impairment will last or is expected to last; and (3) the permanent or long-term impact, or expected impact, of the impairment. Temporary impairments with little or no long-term impact are not sufficient.

In determining whether an impairment substantially limits a major life activity, you must consider the impairment without regard to the effects of such measures as medication, therapies, or surgery. In doing so, you may consider evidence of the expected course of a particular disorder without medication, therapies, or surgery.

If an impairment is episodic or in remission, it is still a "disability" if it substantially limited a major life activity when it was active or if it would substantially limit a major life activity when active.

A "qualified individual" is one who, with or without reasonable accommodations, can perform the essential functions of the job. The term "essential functions" means the fundamental job duties of the employment position a plaintiff held. The term does not include the marginal functions of the position.

In determining whether a job function is essential, you should consider the following factors: the employer's judgment as to which functions are essential; written job descriptions; the

amount of time spent on the job performing the function; the consequences of not requiring the person to perform the function; the terms of a collective bargaining agreement; the work experience of persons who have held the job; the current work experience of persons in similar jobs; whether the reason the position exists is to perform the function; whether there are a limited number of employees available among whom the performance of the function is to be distributed; whether the function is highly specialized and the individual in the position was hired for her expertise or ability to perform the function. You may also consider other factors.

The term "accommodation" means making modifications to the work place that allow a person with a disability to perform the essential functions of the job, to attain the level of performance available to similarly situated employees who are not disabled, or to enjoy equal benefits and privileges of employment as are enjoyed by similarly situated employees who are not disabled.

A "reasonable" accommodation is one that could reasonably be made under the circumstances. It may include, but is not limited to: (a) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; or (b) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials, or policies, the provision of qualified readers or interpreters and other similar accommodations for individuals with disabilities. There may be other reasonable accommodations.

Although part time work and job restructuring may be reasonable accommodations, an employer is not required to offer these accommodations in every case. An employer is not required to restructure a job if that would reallocate the job's essential functions. An employer is not obligated to hire additional employees or reassign existing workers to assist an employee with a

disability. The ADA does not require an accommodation that would cause other employees to work harder, work longer hours, or lose opportunities. There may be other reasonable accommodations, but an employer is not required to provide an employee the accommodation he or she requests or prefers. The employer need only provide some reasonable accommodation.

Defendant City of Elgin claims that Plaintiff Bonnie Crankshaw's requested accommodation would have imposed an undue hardship on Defendant City of Elgin. An employer need not provide an accommodation to the known limitations of a qualified employee or applicant if the employer proves that the accommodation would impose an undue hardship on its business operations. The employer has the burden of proving by a preponderance of the evidence that the accommodation would have imposed an undue hardship.

An "undue hardship" is an action requiring the employer to incur significant difficulty or expense. Factors to be considered in determining whether the requested accommodations would cause an undue hardship include: (a) the nature and cost of the accommodation; (b) the overall financial resources of the City of Elgin involved in the accommodation, the number of persons employed there, the effect on expenses and resources, or the impact otherwise on the City of Elgin's operation; (c) the overall financial resources of the employer, the overall size of the business with respect to the number of employees, and the number, type, and location of its facilities; and (d) the type of operation of the employer, including the composition, structure, and functions of the workforce, the impact of the requested accommodations on City of Elgin, including the impact on the ability of other employees to perform their duties.

To show that Defendant City of Elgin failed to accommodate Plaintiff Crankshaw's PTSD, Plaintiff must prove that the individuals at Defendant City of Elgin who denied her

request for accommodations knew of her disability. You may consider  evidence about information learned from communications with Plaintiff. In addition, an employer is presumed to know information in its files or records  about its employees. But an employer is not presumed to know information in records that are not in its files. Nor is an employer required to draw conclusions that  an individual has a mental or psychological disorder if it is not obvious to an ordinary person.

The ADA does not shield against harsh treatment in the workplace. Nor does the statute require the employer to have good cause for its decisions. The ADA is not a vehicle for second-guessing business decisions. An employer may take adverse action against an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, so long as the action is not for one a reason prohibited under the ADA.

### D. <u>ADA & TCHRA Retaliation</u>

Plaintiff Bonnie Crankshaw claims that she was retaliated against by Defendant City of Elgin for making disability accommodation requests, a protected activity under the law. Plaintiff Bonnie Crankshaw claims that she made requests for accommodations under the law, and that Defendant City of Elgin retaliated against her for making these accommodation requests by terminating her employment. Defendant City of Elgin denies Plaintiff's claims and contends that it terminated Plaintiff for a non-discriminatory reason.

It is unlawful for an employer to retaliate against an employee for engaging in a protected activity.

To succeed on her claim, Plaintiff Crankshaw must prove each of the following facts by a preponderance of the evidence:

1. Plaintiff made an accommodations request;

2. Defendant City of Elgin terminated Plaintiff's employment; and

3. Defendant City of Elgin terminated Plaintiff Crankshaw on account of her engaging in protected activity.

You need not find that the only reason for Defendant City of Elgin's decision was Plaintiff's protected activity. But you must find that Defendant's decision to terminate Plaintiff would not have occurred in the absence of—but for—her protected activity. If you disbelieve the reason Defendants have given for its decision, you may, but are not required to, infer that Defendants would not have terminated Plaintiff's employment but for her FMLA-protected activity.

### E.  <u>ADA & TCHRA Discrimination based on Disability</u>

Plaintiff Bonnie Crankshaw claims that Defendant City of Elgin discriminated against her because she had a disability by terminating her employment. Defendant City of Elgin denies Plaintiff's claims and contend that she was terminated because of poor job performance and abandoning her job.

It is unlawful for an employer to discriminate against an employee because of the employee's disability. Unlawful discrimination can include terminating the employment of a qualified individual with a disability. To succeed in this case, Plaintiff must prove each of the following by a preponderance of the evidence:

1.  Plaintiff had post-traumatic stress disorder;

2.  Plaintiff's post-traumatic stress disorder substantially limited her ability to concentrate, think, communicate, and work;

3.  Defendant City of Elgin knew Plaintiff had post-traumatic stress disorder;

4.  Defendant City of Elgin terminated Plaintiff's employment;

5.  Plaintiff was a qualified individual who could have performed the essential functions of her Human Resources Administrator job when Defendant City of Elgin terminated her; and

6.  Defendant City of Elgin terminated Plaintiff because of her post-traumatic stress disorder. Plaintiff does not have to prove that her post-traumatic stress disorder was the only reason Defendant terminated her employment.

If Plaintiff Crankshaw has failed to prove any of these elements, then your verdict must be for Defendant City of Elgin.

A "disability" is a mental impairment that substantially limits one or more major life activities. In determining whether Plaintiff's post-traumatic stress disorder substantially limits her ability to concentrate, think, communicate, and work, you should compare her ability to concentrate, think, communicate, and work with that of the average person. In doing so, you

should also consider: (1) the nature and severity of the impairment; (2) how long the impairment will last or is expected to last; and (3) the permanent or long-term impact, or expected impact, of the impairment.

Temporary impairments with little or no long-term impact are not sufficient. In determining whether an impairment substantially limits a major life activity, you must consider the impairment without regard to the effects of such measures as medication, therapies, or surgery. In doing so, you may consider evidence of the expected course of a particular disorder without medication, therapies, or surgery.

To prove that Plaintiff's disability was the reason for her termination, Plaintiff must prove that the individuals at Defendant City of Elgin who made the decision to terminate her knew of her disability. You may consider evidence about information learned from communications with Plaintiff Crankshaw. In addition, an employer is presumed to know information in its files or records about its employees. But an employer is not presumed to know information in records that are not in its files. Nor is an employer required to draw conclusions that an individual has a mental or psychological disorder if it is not obvious to an ordinary person.

**F.  Qualified Immunity**

In addition to alleging that Defendant City of Elgin retaliated against her under the FMLA, Plaintiff Bonnie Crankshaw has also alleged that Defendant Thomas Mattis retaliated against her in his individual capacity for engaging in FMLA protected activity and that Defendant Thomas Mattis interfered with her entitlement to that time off by threatening to fire her if she took FMLA leave.

As to these claims, you must consider whether Defendant Thomas Mattis is entitled to what the law calls "qualified immunity." Qualified Immunity bars a defendant's liability even if he violated a plaintiff's constitutional rights. Qualified immunity exists to give government officials breathing room to make reasonable but mistaken judgments about open legal questions. Qualified immunity provides protection from liability for all but the plainly incompetent government officials, or those who knowingly violate the law. It is Plaintiff Crankshaw's burden to prove by a preponderance of the evidence that qualified immunity does not apply in this case.

Qualified immunity applies if a reasonable official could have believed that the firing was lawful in light of clearly established law and the information Defendant Mattis possessed. But Defendant Mattis is not entitled to qualified immunity if, at the time of firing, a reasonable official with the same information could not have believed that his actions were lawful. Government official are presumed to know the clearly established constitutional rights of individuals they encounter. In this case, the clearly established law at the time was that Plaintiff was entitled to FMLA intermittent leave.

If, after considering the scope of discretion and responsibility generally given to officials in performing their duties and after considering all of the circumstances of this case as they would have reasonably appeared to Defendant Thomas Mattis at the time of the firing, you find that Plaintiff Bonnie Crankshaw failed to prove that no reasonable official could have believed that the specified firing was lawful, then Defendant Mattis is entitled to qualified immunity, and your verdict must be

for Defendant Mattis on those claims. But, if you find that Defendant Mattis violated Plaintiff Crankshaw's legal rights and that Defendant Mattis is not entitled to qualified immunity as to that claim, then your verdict must be for Plaintiff Crankshaw on that claim.

## G.  FMLA Interference Damages
(City of Elgin for August 12, 2016 Interference)

Defendant City of Elgin has stipulated that legally it interfered with Plaintiff's FMLA rights when Interim City Manager Kenneth Renneau failed to timely respond to Plaintiff Crankshaw's first FMLA intermittent leave request on August 12, 2016. You must determine the amount, if any, of those damages caused by such interference.

Plaintiff must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. On the other hand, Plaintiff need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit. You may award any actual monetary losses Plaintiff sustained as a direct result of Defendant's violation of the FMLA, such as the cost of providing care.

## H. **FMLA Damages**

If you found that Defendants City of Elgin and Thomas Mattis violated the FMLA, then you must determine whether those violations caused Plaintiff Crankshaw damages. If so, you must determine the amount.

Plaintiff must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Plaintiff need not prove the amount of her losses with mathematical precision, but only with as much certainty and accuracy as the circumstances permit.

You should consider the following elements of damages and no others: any wages, salary, employment benefits, or other compensation denied or lost because of Defendants' violation of the FMLA, if any. You may also award as damages any actual monetary losses Plaintiff sustained as a direct result of Defendants' violation of the FMLA, such as the cost of providing care.

Wages, salary, and benefits include the amounts the evidence shows Plaintiff would have earned had she remained an employee of Defendant City of Elgin from January 13, 2017, to the date of your verdict, including benefits such as life and health insurance, stock options, or contributions to retirement, minus the amounts of earnings and benefits, if any, Defendants prove by a preponderance of the evidence Plaintiff received from employment during that time.

## I.  <u>ADA Damages</u>
(City of Elgin)

If you found that Defendant City of Elgin violated the ADA, then you must determine whether it has caused Plaintiff damages and, if so, you must determine the amount of those damages.

Plaintiff must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Plaintiff need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

You should consider the following elements of actual damages, and no others: (1) the amount of back pay and benefits Plaintiff would have earned in her employment with Defendant City of Elgin if she had not been terminated from January 13, 2017, to the date of your verdict, minus the amount of earnings and benefits that Plaintiff received from employment during that time; (2) the amount of other damages sustained by such as pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

Back pay includes the amounts the evidence shows Plaintiff would have earned had she remained an employee of Defendant City of Elgin. These amounts include wages or salary and such benefits as life and health insurance, stock options, and contributions to retirement. You must subtract the amounts of earnings and benefits Defendant City of Elgin proves by a preponderance of the evidence Plaintiff received during the period in question.

## J.  TCHRA DAMAGES
(City of Elgin)

If you find that Defendant City of Elgin violated the TCHRA, you should consider the following elements of damages: (1) back pay, (2) compensatory damages in the past, and (3) compensatory damages in the future.

"Back pay" is that amount of wages and employment benefits that Plaintiff Bonnie Crankshaw would have earned if she had not been subjected to her employer's unlawful conduct less any wages, unemployment compensation benefits or workers' compensation benefits she received in the interim. "Employment benefits" include sick-leave pay, vacation pay, profit-sharing benefits, stock options, pension fund benefits, housing or transportation subsidies, bonuses, monetary losses incurred as a result of the loss of health, life, dental, or similar insurance coverage.

"Compensatory damages" in the past includes emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

"Compensatory damages in the future" includes economic losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses.

## K.  MITIGATION OF DAMAGES

Defendants City of Elgin and Thomas Mattis assert that Plaintiff Bonnie Crankshaw failed to mitigate her damages. To prevail on this defense, Defendants must show, by a preponderance of the evidence: (a) that there was "substantially equivalent employment" available; (b) Plaintiff failed to use reasonable diligence in seeking those positions; and (c) the amount by which Plaintiff's damages were increased by her failure to take such reasonable actions.

"Substantially equivalent employment" in this context means a job that has virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the job she lost. Plaintiff does not have to accept a job that is dissimilar to the one she lost, one that would be a demotion, or one that would be demeaning. However, if Plaintiff failed to seek substantially equivalent employment for personal reasons, health reasons, or to attend school, you may find that she failed to mitigate her damages. The reasonableness of Plaintiff Bonnie Crankshaw's diligence should be evaluated in light of her individual characteristics and the job market.

### [CLOSING ARGUMENTS]

### INSTRUCTIONS ON DELIBERATION

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

When you retire to the jury room to deliberate, you may take with you the charge, the verdict form, and the exhibits that the Court has admitted into evidence. Select your Presiding Juror and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial.

After you have reached your unanimous verdict, your Presiding Juror must fill in your answers to the written questions and sign and date the verdict form. Unless I direct you otherwise, do not reveal your answers until such time as you are discharged. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so. Having now heard the closing arguments of parties, you will now retire to the jury room to deliberate on your verdict.

Submitted the __23rd__ day of __May__, 2019, at __12²⁰__ o'clock __p__.m.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE