IN THE UNITED STATES DISTRICT COURT
WESTERN DIVISION OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BONNIE CRANKSHAW | § | |
| Plaintiff | § | |
| v. | § | Case 1:18-cv-00075-RP |
| | § | |
| CITY OF ELGIN AND THOMAS | § | |
| MATTIS, CITY MANAGER, IN | § | |
| HIS INDIVIDUAL CAPACITY | § | |
| Defendants | | |

## DEFENDANTS' RESPONSE OPPOSING PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT OR, ALTERNATIVELY, FOR NEW TRIAL

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COME Defendants City of Elgin and Thomas Mattis (collectively "Defendants"), and file this Response in Opposition to Plaintiff Bonnie Crankshaw's (hereinafter "Plaintiff") Plaintiff's Motion to Alter or Amend the Judgment or, Alternatively, for New Trial, (hereinafter "Plaintiff's Motion") and would respectfully show as follows:

### SUMMARY OF THE ARGUMENT

Contrary to Plaintiff's contention, the record is *rife* with evidence that Plaintiff's accommodation request was unreasonable, and the jury is due significant deference in its decision on that issue. Plaintiff also cannot use a Rule 59 Motion to obtain relief that is either provided for by other rules or has already been decided by this Court, and the issues relevant to that argument have already been briefed and are incorporated herein. This Court also did not err in choosing not to allow a "mixed-motive" legal standard to determine FMLA liability for three reasons. First, the "because of" standard argued and negotiated between the parties arguably served as a hybrid between the two standards, and agreeing to that language may have waived

1

Plaintiff's rights to challenge it now. Second, Plaintiff failed to ever plead and provide fair notice that she intended the case to be considered under a mixed-motive legal standard, and she cannot later ambush Defendants with a new standard long after the close of discovery. Lastly, the Supreme Court's decisions in *Gross* and *Nassar* require that FMLA Retaliation must not be evaluated using a mixed-motive legal standard, because—just as in ADEA and Title VII Retaliation cases—Congress never created or amended the FMLA statutes to allow the low burden of proof that the mixed-motive standard creates.

1.    <u>Relevant Standards of Review</u>

When a party moves for a new trial, the broad discretion allowed to a trial court is tempered by the deference due to a jury.[1] When a motion for new trial is based on the insufficiency of the evidence, a stringent standard applies, and the motion should be granted only if the verdict is against the great weight of the evidence.[2] "The 'great weight of the evidence' standard is not easily met."[3] The Supreme Court has held that "against the great weight of the evidence" is the rough equivalent of the standard it discussed in *Jackson*: "whether 'no rational trier of fact could have' reached the same verdict."[4] If a court grants a motion for new trial on grounds that the verdict was against the great weight of the evidence, it must state the reasons for its decision.[5] If a court instead denies a motion for new trial, it does not need to write a comprehensive opinion or indicate the grounds for its ruling.[6] The review of a denial of a new trial motion is more limited than when one is granted.[7] A denial will be affirmed unless, on

---

[1] *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir.1989).
[2] *See International Ins. V. RSR Corp.,* 426 F.3d 281, 300 (5th Cir.2005).
[3] *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 931 (5th Cir.1982).
[4] *See Honda Motor Co. v. Oberg*, 512 U.S. 415, at n.10 (1994), *citing Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–2792, 61 L.Ed.2d 560 (1979).
[5] *See Shaffer v. Wilkes*, 65 F.3d 115, 118 (8th Cir.1995).
[6] *See Dunn v. Truck World, Inc.*, 929 F.2d 311, 313 (7th Cir.1991).
[7] *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir.1998).

appeal, the movant makes a "clear showing" of "an absolute absence of evidence to support the jury's verdict."[8] An order granting a new trial is usually not reviewable until after the case is resolved by a final judgment, normally after the new trial takes place.[9]

2.    There is legally sufficient evidence to support the jury verdict denying Plaintiff's claim for failure to accommodate.

Plaintiff wrongly contends that "the City presented no evidence that any of the these proposed accommodations Plaintiff requested were unreasonable."[10] The entire trial was *rife* with proof that Plaintiff's requested accommodations were unreasonable. Crankshaw had previously been working under the same flexible work arrangement she later sought to regain through the use of an ADA accommodation, and her previous job performance under that flexible work arrangement resulted in severely deficient job performance that significantly affected Crankshaw's fellow employees. In addition to real-world proof, Defendants also offered expert testimony on the issue.

Barbara Wilson, the subsequent person who took over Crankshaw's HR duties for Elgin, testified at length about what duties she had to perform in that position, why she needed to be present in the office to perform those duties, and why she was not able to perform those duties from home. Such reasons included, but were not limited to, the fact that many of the employees who consult the HR department in Elgin do so via in-person visits, whether because the persons do not have a home computer, they are "old school," or because they do not speak English as a first language and struggle to communicate effectively using phone or email. Director of Utilities Doug Prinz's deposition video shown at trial included the following testimony regarding his

---

[8] *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1049 (5th Cir.1998).
[9] *See Allied Chem Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).
[10] Dkt. No. 85, pg. 10.

problems reaching or obtaining her HR assistance when she was working remotely pursuant to

the same flexible work arrangement she requested as an ADA accommodation:

> "Q. Okay. What were those complaints?
> A. She was never there.
> Q. Okay. That's what you told Mr. Mattis?
> A. Every time you needed something, she wasn't there to talk to. She would say to call or e-mail and you would do that and you still wouldn't get a response.
> Q. Okay. Had you discussed that before with [former Interim City Manager] Mr. Reneau?
> A. Yes, I did.
> Q. And had you discussed that before with [former City Manager] Mr. Lacy?
> A. Yes, I did.
> Q. Had you discussed that before with Bonnie Crankshaw?
> A. In passing, when she would say, "Well, put it under my door if I'm not there," on a piece of paper or whatever; or "Call me."
> "I did, but you still didn't answer."[11]

Prinz also testified about his own personal experiences attempting to get help through HR with

Elgin's employee health insurance plan, namely help with requesting that the insurance carrier

reconsider its refusal to pay for an MRI for what later turned out to be a stroke.[12] He

unsuccessfully attempted to meet with her in her office, called several times during work hours,

and only recalls her answering the phone on one occasion.[13] On that occasion, she sounded like

she had just woken up.[14] He ultimately resorted to going to the emergency room because even

after he finally reached her via phone about the issue, Crankshaw did not take any action to help

him.[15] To the best of defense counsel's recollection, the following other current or past Elgin

employees also testified at trial about significant problems associated with employees not being

able to reach Crankshaw when she was supposedly working remotely from home pursuant to her

---

[11] *See* Doug Prinz deposition, pg. 22, lns. 21-25; pg. 23, lns. 1-13.  Exhibit "A".
[12] *Id* at pgs. 46-49.
[13] *Id.*
[14] *Id.*
[15] *Id.*

flexible work arrangement: finance employee Laura Schwartz, Director of Public Works Joe Parten, Mayor Chris Cannon, City Councilwoman Sue Brashar, former Interim City Manager Kenneth Reneau, and former Chief of Police Chris Bratton.

City Manager Thomas Mattis was formally designated as an expert witness—without objection—regarding the inner working of city government generally, including but not limited to the job duties of HR employees within city governments, and what constitutes reasonable expectations regarding job performance for HR employees within city government.[16] He testified regarding the reasons why he believed a single-person HR department in a city government needs to have an employee available and present in the office full time, as opposed to remotely from home as Plaintiff requested as an ADA accommodation. Former Interim City Manager, Kenneth Reneau, was also designated as an expert witness—without objection—in the same areas.[17] To the best of defense counsel's recollection, Reneau also testified regarding why he believed that Crankshaw, as the sole HR employee, needed to be physically present in the office in order to fulfill her job duties. In other words, two properly designated expert witnesses testified that working on-site was necessary for Crankshaw's job position, and the jury was free to conclude from that testimony that requesting to instead work from home was not a reasonable accommodation. If expert testimony and a failure of the same accommodations in the past— utilized by the *same exact employee*—do not count as evidence that the requested accommodations were not reasonable, then the undersigned counsel is unsure of what evidence would *ever* be sufficient under Plaintiff's proffered standards.

---

[16] Dkt. No. 45.1, pg. 9.
[17] *Id.*

3.     Plaintiff misrepresents the burden of proof for Failure to Accommodate.

Plaintiff's contention that "the City presented no evidence that any of the these proposed accommodations Plaintiff requested were unreasonable" is also problematic because it suggests that it was Defendants' burden to prove that the accommodations were unreasonable.[18] The relevant portion of the jury charge—which, to the best of counsel's recollection, was not objected to by Plaintiff—stated in regards to Failure to Accommodate that, "Plaintiff Bonnie Crankshaw must prove each of the following by a preponderance of the evidence:…6. Providing an accommodation would have been reasonable."[19] The charge also listed what the jury should consider when determining whether Crankshaw had met her burden of proof to prove that the requested accommodations were reasonable.[20] The charge further instructed the jury that, "[a]lthough part time work and job restructuring may be reasonable accommodations, an employer is not required to offer these accommodations in every case."[21] Plaintiff chose not to retain any experts to testify regarding whether the proffered accommodations were reasonable, and very little—if *any*—testimony or evidence was offered that would be probative in favor of a determination that the requested accommodations were in fact reasonable under the circumstances.[22] The jury answered "NO" to the question asking whether Plaintiff met her

---

[18] Dkt. No. 85, pg. 10.

[19] Dkt. No. 67, pg. 15-16.

[20] *Id* at 17.

[21] *Id* at 17.

[22] To the best of his recollection, and contrary to Plaintiff's representation, defense counsel does not recall ever hearing former Interim City Manger Kenneth Reneau testify in a way that could be construed to characterize Plaintiff's ADA accommodation requests as reasonable, especially considering the fact that he testified that he did not believe in the efficacy of a flexible work arrangement for that job position. *See* Dkt. No. 85, pg. 10.

burden to prove that her requested accommodations were reasonable, and deference should be given to the jury as to the validity of its determination.[23]

In the alternative, the charge instructed the jury that, an "employer need not provide an accommodation to the known limitations of a qualified employee or applicant if the employer proves that the accommodation would impose an undue burden on its business operations," and that it is the employer's burden of proof to prove undue hardship.[24] Factors to be considered included "the type of operation of the employer, including the composition, structure, and functions of the workforce, the impact of the requested accommodations on [the] City of Elgin, including impact on the ability of other employees to perform their duties."[25] As referenced above, significant evidence was offered on several of these factors. If the jury believed that the Defendants met their own burden of proof to show that the requested accommodations were an undue hardship, then the jury's decision to not find liability on Failure to Accommodate naturally follows.

4.   Plaintiff cannot circumvent Rule 50 by using a Rule 59 motion.

Much of Plaintiff's requested relief is more properly provided by a Rule 50(b) RJMOL, which Plaintiff is barred from asserting because she failed to make a Rule 50(a) JMOL prior to the jury's deliberations. For the purposes of judicial economy, Defendants incorporate by reference all arguments and authorities asserted in their Defendants' Reply to Plaintiff's Response in Opposition to Defendants' Motion to Enter Judgment.[26] Plaintiff's request to increase the Plaintiff's damages award, award front pay damages, and assess additional

---

[23] Dkt. No. 71, pg. 4; *see also Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir.1989)("the broad discretion allowed to the trial court" in granting a motion for new trial "is tempered by deference due to a jury.")

[24] Dkt. No. 67, pg. 18.

[25] *Id.*

[26] Dkt. No. 79.

liquidated damages has also already been decided by this Court, and Plaintiff cannot circumvent those rulings by requesting the same previously-denied relief under a different motion or rule.[27] If Plaintiff believed that the compensatory damages had already been established, or that Elgin had already violated the ADA as a matter of law, the time to make that argument was either in summary judgment or at the close of evidence with a Rule 50(a) motion. She failed to so move, and thus she is barred from doing so now.

5.   The operative language ultimately used and agreed upon in the jury charge was "because of," which arguably represents a hybrid between the two legal standards.

When the charge was argued by—and negotiated between—the parties, the ultimate jury charge language fit neither the "but for" nor "mixed motive" language from the 5th Circuit's pattern jury charge.[28] If anything, the ultimate language served as a hybrid approach between the two standards, or even an analogous version of the mixed-motive standard itself. The relevant jury question read: "Has Plaintiff Crankshaw proved that Defendant City of Elgin terminated her **because of** her disability?"[29] At the very least, "because of" represents a softened and easier to meet version of "but for." When this case's "because of" standard was coupled with certain language in the jury charge, it arguably became the equivalent of the mixed-motive substantial factor standard. The relevant portions of the jury charge in question stated that, "Plaintiff Crankshaw does not have to prove that her FMLA-protected activity is the only reason Defendants terminated Plaintiff Crankshaw's employment," and "[i]n making your assessment, you are not required to believe inconsistent or later-determined explanations for the Defendants'

---

[27] *See Diebitz v. Arreola*, 834 F.Supp. 298, 302 (E.D.Wis.1993)("Rule 59(e) motions are not intended to merely relitigate old matters nor are such motions intended to allow the parties to present the case under new theories.")

[28] Defense counsel does recall Plaintiff's counsel agreeing to the "because of" language, but does not recall whether or not he did so subject to any objections to not allowing a mixed motive instruction.

[29] Dkt. No. 71, pg. 3.

decision to terminate Plaintiff."[30] Therefore, the ultimate language agreed upon and used by the parties was arguably the equivalent of the "mixed-motive" standard, and granting a new trial would not be appropriate.

6.  Plaintiff failed to plead—and thus give fair notice—that she contended the case be governed under a mixed-motive theory of relief.

Plaintiff waived her right to seek a mixed-motive jury instruction by failing to plead and give fair notice of it to Defendants. Under the Federal Rules of Civil Procedure, affirmative defenses must be pled or they are waived.[31] "An affirmative defense is subject to the same pleading requirements as is the complaint," which requires that "fair notice" be given of the legal theory being advanced.[32] The fair notice pleading standard is met when the opposing party sufficiently articulates the legal theory so that "the opposing party is not a victim of unfair surprise."[33]

The main difference in regards to the mixed-motive legal standard vs. the normal legal standard for FMLA retaliation cases is the use of the language "motivated by" in place of "but for."[34] Plaintiff's First Amended Complaint is Plaintiff's most recent complaint.[35] Had Plaintiff alleged therein that the City of Elgin's decision to terminate her was "motivated by" her FMLA protected activity, then Plaintiff would have satisfied her pleading requirement and given Defendant fair notice of her intended legal theory of relief. She did not. Plaintiff failed to include the word "motivated," nor any analogous terms, anywhere in Plaintiff's First Amended Complaint, nor did she ever use the words "mixed-motive" or otherwise suggest that other non-

---

[30] Dkt. No. 67, pg. 13.
[31] *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999)("The Federal Rules require an affirmative defense to be pleaded; failure to plead such a defense constitutes waiver.")
[32] *Woodfield* at 362.
[33] *Id.*
[34] 2014 5th Circuit Pattern Jury Charge, pg. 261, n.1.
[35] Dkt. No. 16.

discriminatory reasons led to her termination.[36] In fact, at no time did Plaintiff argue, suggest, or admit there were other potential reasons to terminate her employment. Plaintiff's failure to give fair notice of the legal theory being advanced—i.e. that the case should be governed under the alternative (and outdated) mixed-motive legal standard for FMLA Retaliation—resulted in a waiver of her right to request a mixed-motive instruction at the close of trial. Allowing parties to behave otherwise would create unfair surprise and an undue burden on parties building their evidentiary case through discovery who have the right to know what legal standards the evidence will be judged upon at trial.

7.   <u>Plaintiff's mixed-motive argument ignores a sea change in employment law.</u>

The "mixed-motive" theory of recovery was statutorily added to Title VII with the Civil Rights Act of 1991 for a specific subset of Title VII claims, namely Title VII Discrimination claims.[37] In contrast, no mixed-motive standard was ever statutorily created for Title VII Retaliation claims, FMLA claims, ADA claims, or ADEA claims.[38] Despite no similar language having been added to statutes governing those other claims, a handful of appellate courts began allowing the use of the "mixed-motive" legal standards for all employment law cases, whether under that one amended subset of Title VII or not. Plaintiff cited *Richardson*, the 5th Circuit case that followed that trend in 2005.[39] Since that time, the Supreme Court has put a stop to allowing claims that do not have "mixed-motive" statutory language from using a mixed-motive jury

---

[36] *Id.*

[37] *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 174 (2009), citing 42 U.S.C. § 2000e–2(m) (providing that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a ***motivating factor*** for any employment practice, even though other factors also motivated the practice (original emphasis)")

[38] *Compare* 29 U.S.C. § 2615(a), with 29 U.S.C. § 623(a)(1), 42 U.S.C. § 2000e-3(a).

[39] Dkt. No. 85, pg. 7-8. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005); *compare with Hyde v. K.B. Home, Inc.,* 355 Fed. Appx. 266, 272-73 (11th Cir. 2009) (applying the *McDonnell Douglas* "but-for" framework to plaintiff's FMLA retaliation claim).

instruction framework. In 2009, the Supreme Court held in *Gross* that a mixed-motive jury instruction is never proper in an ADEA age discrimination case.[40] The Court noted that:

> Unlike Title VII['s anti-discrimination provision], the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor…We cannot ignore Congress' decision to amend Title VII's relevant provisions but not make similar changes to the ADEA. When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.[41]

The Supreme Court followed up that decision with *Nassar,* which shut the door on the use of the mixed-motive legal standard for Title VII *Retaliation* claims.[42] Congress explicitly modeled the FMLA's Retaliation statutes after Title VII's Section 105(a)(2), which makes it unlawful for an employer to discharge any individual for opposing any practice made unlawful by this title.[43] Thus, based on the FMLA's own legislative history, FMLA Retaliation cases should not be decided on a mixed-motive standard pursuant to the Supreme Court precedent in *Nassar.*

Since *Nassar*—and contrary to Plaintiff's representation otherwise—the 5th Circuit cases have <u>not</u> held that the mixed-motive legal framework is proper for FMLA Retaliation, because in each subsequent case they have specifically noted that either none of the parties had appealed on mixed-motive grounds, or it was not necessary to make that determination because each case was decided on different grounds. In Plaintiff's cited *Ion* from 2013, the 5th Circuit noted the sea change in mixed-motive law brought about by the Supreme Court's two rulings, but the Court explicitly did not address it because, "neither party has sought additional briefing in light of

---

[40] *Gross* at 169.

[41] *Gross* at 174.

[42] *Univ. of Tex. SW. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)(distinguishing between Title VII Discrimination and Retaliation claims, and holding that the "mixed-motive" framework is only available in the former, not the latter).

[43] This "opposition" clause is derived from Title VII (42 U.S.C. § 2000e-3(a)) and is intended to be construed in the same manner. Under Title VII and under section 105(a), an employee is protected against employer retaliation for opposing any practice that he or she reasonably believes to be a violation of this title. (H.R. Rep. No. 103-8(1), at 46 (1993).)

*Nassar* or urged the court to revisit the applicability of the mixed-motive analysis" and "do not

now contest the resolution of…the mixed-motive rubric."[44] In *Harrelson*, the Court noted that,

"neither party argues that the court should apply the but-for standard articulated in

[*Nassar*]…[and]…the mixed-motive argument is not at issue in this case."[45] In *Castay* from

2015, the Court once again did not reach the issue of whether *Gross* and *Nassar* serve to

similarly put a stop to using mixed-motive instructions in FMLA Retaliation cases where such

language was never intended by Congress.[46] Finally, the 5th Circuit recently opined that the "but

for" causation standard claims may apply to FMLA Retaliation claims based on the holdings in

*Gross* and *Nassar,* but once again did not need to reach that decision because the case was

decided on different grounds.[47]  Several other courts have now held that FMLA Retaliation

cases—in light of *Gross* and *Nassar*—cannot use a mixed-motive framework, and instead must

use the traditional "but-for" causation standard.[48] For the exact same reasons, numerous Courts

---

[44] *Ion* at 389-390.

[45] *Harrelson v. Lufkin Indus., Inc*., 614 F. App'x 761, *N 3 (5th Cir. 2015).

[46] *Castay v. Ochsner Clinic Found*., 604 Fed.Appx. 355, *N 2 (5th Cir.2015)(Because the case was decided on other grounds, the Court chose to "leave the determination of *Nassar's* potential applicability to FMLA retaliation cases to another case.")

[47] *See Wheat v. Florida Par. Juvenile Justice Com'n*, 811 F.3d 702, 706 (5th Cir. 2016).

[48] *See e.g. Gourdeau v. City of Newton*, 238 F.Supp.3d 179, 194-95 (D. Mass. Mar. 2, 2017)(discussing FMLA causation legal standards post-*Nassar* at length, and holding that "[t]his Court now concludes that retaliation claims brought under the FMLA must be proved according to a but-for causation standard"); *see also Jones v. Allstate Insurance Co.,* 281 F.Supp.3d 1211, 1222–223 (N.D. Ala. 2016)(applying the use of a mixed-motive standard in a FMLA Retaliation case in light of *Nassar*, and noting that *Chevron* Deference is not appropriate under *Skidmore*, because the Department of Labor has "acknowledged that FMLA and Title VII are to be construed 'in the same manner.'"); *see also Housel v. Rochester Institute of Tech*., 6 F.Supp.3d 294, 303–04 (W.D.N.Y.2014)(applying *Nassar* to all Retaliation claims, including FMLA Retaliation); *see also Wallace v. Lockheed Martin Corp.*, 2019 WL 2100268, at *8-9 (D. Ariz. May 14, 2019)("The Supreme Court has held that causation for Title VII retaliation (and by extension, FMLA retaliation) requires a showing that protected activity was the but-for cause of an adverse employment action."); *see also Sparks v. Sunshine Mills, Inc.*, 2013 WL 4760964, at *17 (N.D. Ala. Sept. 4, 2013)("[T]he Supreme Court's determination that the "but for" causation standard applies where an employee alleges discrimination because he engaged in some protected activity also applies in the FMLA context."); *see also Taylor v. Rite Aid Corp.*,

have similarly determined that *Nassar* requires that a very similar cause of action—ADA Retaliation cases—must now follow suit and no longer allow the use of a mixed-motive legal standard where Congress has not created one.[49] Retaliation claims made pursuant to the FMLA should be no different. Because the federal statutes that created FMLA Retaliation similarly do not contain any language that would allow the use of a mixed-motive legal framework, Plaintiff's attempt to do so here must fail.

## III. PRAYER

WHEREFORE PREMISES CONSIDERED, Defendants respectfully request that this Court deny Plaintiff Crankshaw's Motion to Alter or Amend the Judgment or, Alternatively, for New Trial, and for all other relief to which the Defendants may justly be entitled.

---

993 F.Supp.2d 551, 556 (D.Md. Jan, 27, 2014)(citing *Nassar* to reject use of mixed-motive standard in FMLA Retaliation case); *see also Latta v. U.S. Steel-Edgar Thompson Plant,* 2013 WL 6252844, at *5 (W.D. Pa. Dec. 4, 2013)(citing *Nassar* in applying "but for" standard to FMLA Retaliation); *see also Adams v. Anne Arundel Cnty. Pub. Sch.,* 789 F.3d 422, 429 (4th Cir. 2015)("holding that FMLA Retaliation claims are analogous to Title VII Retaliation claims); *see also Joyce v. Office of Architect of Capitol,* 966 F. Supp. 2d 15, 23 (D.D.C. 2013) ("As in Title VII, to prove FMLA retaliation, a plaintiff must show that … the employer took the action ***because of*** his protected activity." (emphasis added))

[49] *See Carvajal v. Pride Industries*, 2014 WL 1921732, at *6 (S.D.Cal. 2014)(Listing various District Court decisions through 2014 holding that the mixed-motive standard should no longer be allowed in ADA Retaliation cases based on the Supreme Court's holding in *Nassar*).

Respectfully submitted,

WRIGHT & GREENHILL, P.C.
900 Congress Avenue, Suite 500
Austin, Texas  78701
512/476-4600
512/476-5382- Facsimile

　　 /s/ Blair J. Leake
By:_____
　　 Archie Carl Pierce
　　 State Bar No. 15991500
　　 cpierce@w-g.com
　　 Blair J. Leake
　　 State Bar No. 24081630
　　 bleake@w-g.com
　　 Stephen B. Barron
　　 State Bar No. 24109619
　　 sbarron@w-g.com

**ATTORNEYS FOR DEFENDANTS CITY OF ELGIN AND THOMAS MATTIS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of September, 2019, a true and correct copy of the above and foregoing Response was electronically filed with the Clerk of the Court using the CM/ECF system which will automatically serve a Notice of Electronic Filing on the following counsel of record:

David Campbell
O'HANLON, DEMERATH & CASTILLO
808 West Avenue
Austin, Texas  78701
**Attorneys for Plaintiff**

　　　　　　 /s/ Blair J. Leake
　　　　　　 Blair J. Leake